Randall MIDDLETON *v.* STATE of Arkansas

CA CR 89-41                                    780 S.W.2d 581

Court of Appeals of Arkansas
Division I
Opinion delivered October 11, 1989

*Martin Law Firm, P.A.,* by: *Thomas A. Martin,* for appellant.

*Steve Clark,* Att'y Gen., by: *Ann Purvis,* Asst. Att'y Gen., for appellee.

JAMES R. COOPER, Judge. The appellant in this criminal case was convicted of DWI, second offense, in the Municipal Court of Newton County. After a *de novo* jury trial in the Newton County Circuit Court, the appellant was again convicted of that offense, fined $3,000.00, and sentenced to seven days in the Newton County jail. From that decision, comes this appeal.

No breathalyzer or blood test was performed on the appellant, but the arresting officer did perform various field sobriety tests. The field tests included a gaze nystagmus test, which is intended to determine impairment based on the reaction of the subject's eyes to certain stimuli. At trial, the State qualified the arresting officer as an expert and elicited testimony from him based on the gaze nystagmus test to show that the appellant's alcohol level was .15 or .16. The appellant objected to the officer's qualifications as an expert, to the validity and accuracy of the test, and to testimony assigning an alcohol level based on the test results. After the latter testimony was admitted, the appellant moved for a mistrial. His motion was denied. On appeal, he argues that the trial court erred in denying his motion for a mistrial, and erred in giving an expert witness instruction to the jury. We reverse.

■ We first note that the appellant failed to preserve for appeal any error which may have resulted from the expert witness instruction being given to the jury. An argument for reversal will not be considered in the absence of an appropriate objection in the trial court; to be considered appropriate, an objection must be made at the first opportunity. *Dillard* v. *State,* 20 Ark. App. 35, 723 S.W.2d 373 (1987). The record shows that the appellant made no objection to the jury instruction until after the jury had returned a guilty verdict. The objection was untimely and, therefore, this issue has not been preserved for appeal.

The only remaining issue is whether the trial court erred in denying the appellant's motion for a mistrial. The appellant

argues that the gaze nystagmus test results were improperly admitted because they compelled a finding of guilt by the jury, and that the test results were inadmissible for any purpose because there was no foundation laid to establish the reliability, accuracy, and validity of the gaze nystagmus test. We need address only the latter contention, because we find it to be both meritorious and dispositive.

The traditional standard for determining the admissibility of novel scientific evidence derives from the seminal case of *Frye* v. *United States*, 293 F. 1013 (D.C. Cir. 1923), which required a showing that the scientific principle or discovery had been generally accepted in the particular field to which it relates. However, this "general acceptance" standard is not found in the Arkansas Rules of Evidence, and the Arkansas Supreme Court has cited the *Frye* case only recently. In *Rock* v. *State*, 288 Ark. 566, 708 S.W.2d 78 (1986), *vacated on other grounds* 483 U.S. ___, 107 S. Ct. 2704 (1987), the Court declined to decide whether to employ the *Frye* test or an analysis based entirely on the Arkansas Rules of Evidence because the Court found the hypnotically-induced testimony at issue in *Rock* to be inadmissible under either approach. *Rock* v. *State*, 288 Ark. at 570. Although it is unclear whether some form of the *Frye* test may be applicable in Arkansas, *see Dumond* v. *State*, 294 Ark. 379, 743 S.W.2d 779 (1988), we need not decide this issue because, like the Supreme Court in *Rock*, we conclude that the foundation for the scientific evidence in the case at bar was inadequate under either the *Frye* test or the Arkansas Rules of Evidence.

The appellant does not argue on appeal that the arresting officer had insufficient training or experience to administer the gaze nystagmus test, but instead contends only that the test itself is invalid. We need not decide whether or not gaze nystagmus tests are *per se* inadmissible, however, because the record shows that the arresting officer's testimony was insufficient to provide an evidentiary foundation for admission of the test results. The officer, Jerry Watts, testified that he had training and experience in the administration of various field sobriety tests, including the gaze nystagmus test. After Officer Watts described the procedure involved in administering the gaze nystagmus test, the following exchange took place:

Q. Where did you learn about this test?

MR. MARTIN: Your Honor, again, I object, same objection. It is not a scientific test and it's being put on as such.

THE COURT: Objection will be overruled.

A. First from my field training officer, when I was riding with him, and later on at basic police school. Then we brushed on it at state police school, but we didn't get into much depth there.

Q. Now, is this a test, then, that they provided you training in?

A. Yes.

Q. Was it a test that they recommended or asked that you use?

A. Yes, sir.

Q. Any why is — what is significant about that test over some other tests?

MR. MARTIN: Objection, your Honor. He can testify as to the results of the test.

THE COURT: Objection will be overruled.

A. The test is designed to be able to detect DWI whether they're on alcohol or on drugs. It's a test that's used basically nationwide now. It's a test that don't [sic] fail after you learn how to —

MR. MARTIN: Your Honor, I object, that's totally uncalled for. That's exactly the kind of testimony I was trying to keep out, a test that does not fail.

THE COURT: You'll have an opportunity to cross examine, Mr. Martin. The objection will be overruled.

Q. *Why is it the test is considered so reliable and so useful?*

A. *It was scientifically devised. I'm not sure about all the expert testimony.*

MR. MARTIN: Judge, He's obviously not an expert. He's just trying to bolster his own testimony with self-serving nonsense.

THE COURT: Objection will be overruled.

(Emphasis supplied).

Subsequently, Officer Watts testified over objection that the appellant's performance on the gaze nystagmus test indicated an alcohol rating of .15 or .16. The appellant's motion for mistrial was denied. On cross-examination regarding the scientific basis for the gaze nystagmus test, Officer Watts was able to add only that it had been scientifically validated by "one of the universities out in California," but he was unable to name the institution which had performed the study or to otherwise offer support for his testimony that the test had been scientifically validated.

On this record, we think it apparent that Officer Watts' testimony was insufficient to establish that gaze nystagmus testing is reliable and generally accepted in the scientific community. Moreover, we find that any probative value that the gaze nystagmus test results may have had to show an alcohol level in excess of .10 was substantially outweighed by the potential for unfair prejudice under the facts of this case. *See* Ark. R. Evid. 403; *see also Rock* v. *State, supra.* The jury was given an instruction defining the offense of DWI as being in control of a vehicle with an alcohol level of .10 or above, and the only evidence of the appellant's alcohol level was Officer Watts' testimony based on the gaze nystagmus test. Moreover, we think it noteworthy that Ark. Code Ann. § 5-65-103(b) (1987) defines the offense as operating or being in actual, physical control of a motor vehicle:

> if at that time there was one-tenth of one percent (0.10%) or more by weight of alcohol in the person's blood as determined by a chemical test of the person's blood, urine, breath, or other bodily substance.

The gaze nystagmus test which formed the basis for the officer's testimony was performed by moving a pen across the appellant's field of vision to gauge the reaction of his eyes to this stimulus, and was therefore not a "chemical" test of a bodily substance. Under these circumstances, the admission of testimony fixing the

appellant's alcohol level at .15 or .16 was manifestly prejudicial, and we hold that the trial court erred in denying the appellant's motion for mistrial. *See Dillard* v. *State*, 20 Ark. App. 35, 727 S.W.2d 373 (1987). We reverse and remand.

Reversed and remanded.

CRACRAFT and ROGERS, JJ., agree.